UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-753-H

DEBORAH PRECHTEL                                              PLAINTIFF

V.

KELLOGG'S d/b/a                                               DEFENDANT
KELLOGG'S SNACKS

**MEMORANDUM OPINION**

Plaintiff Deborah Prechtel filed this action against her employer, Kellogg's ("Kellogg's" or "Defendant"), alleging that she was subjected to a sexually hostile work environment, paid unequally compared to her male colleagues, and retaliated against for complaining about these allegations. Kellogg's has now filed for summary judgment. For the reasons discussed below, the Court will sustain this motion and dismiss all Plaintiff's claims with prejudice.

I.

Prechtel began working at the Louisville cookie factory in 1988; that facility was later acquired by Kellogg's. In April 2003, Ray Hauser began working at the Louisville facility as the Plant Operations Manager. He soon became Prechtel's immediate supervisor while Prechtel was a Team Leader. Team Leaders supervise Line Managers. Prechtel was a Team Leader from January 2004 until June 2005, at which time Hauser informed Prechtel that she would likely be demoted to Line Manager because of substandard performance. Her demotion took effect January 2006. She is still employed by Defendant as a Line Manager.

Prechtel alleges that she was subjected to the following incidents of sexual harassment:

- In October 2004, after a group outing to a casino and when Prechtel was driving Hauser home, Hauser allegedly told Prechtel he wished "Jenny [a co-worker] would go home and [Prechtel] would spend the night with [him]." After this comment, Prechtel and co-worker Jenny Stewart entered Hauser's home and spent thirty minutes examining Hauser's home entertainment system.

- During the same October 2004 car ride, Hauser allegedly told Prechtel he was attracted to her.

- In November 2004, Prechtel states she had cookie crumbs on her chest while at work; a female coworker reached over and brushed them off. Prechtel alleges that Hauser walked by, said "I wish I could do that," and walked away.

- In March 2005, during another group outing to a casino, Prechtel alleges Hauser attempted to grab her leg. Prechtel allegedly intercepted this attempt.

Prechtel does not allege any further incidents of sexual harassment. She did not report these incidents to Human Resources or anyone else at Kellogg's. Kellogg's first became aware of these allegations on or about June 24, 2005, when Jenny Stewart told Hauser that Prechtel intended to sue the company for sexual harassment. The company launched an internal investigation in early July 2005, ultimately concluding that it could not corroborate the allegations. Prechtel did not file an Equal Employment Opportunity Commission ("EEOC") charge.

On June 14, 2005, Hauser informed Prechtel that management believed that her performance was substandard and that, as a result, she would face three options: taking a demotion to Line Manager to improve her managerial skills; leaving the company with

2

severance; or continuing in the Team Leader role and risking having her substandard performance documented. Prechtel does admit that one of her lines was not meeting production goals. She initially agreed to being demoted, but on June 27, 2005, she changed her mind and told Hauser she was going to hire an attorney. She then took two consecutive leaves of absence. She filed this lawsuit on October 12, 2005.

When Prechtel returned to work on January 17, 2006, she worked as a Line Manager and reported to Shawn Showalter. Plaintiff alleges that Showalter retaliated against her when he engaged in the following behavior:

- In January 2006, Showalter and Sherry Barstamian verbally counseled Prechtel that there was a perception that she was not staying on her production line.

- Prechtel received a written warning for failing to place the correct code dates on the packages of cookies her line manufactured.

- On or about March 1, 2006, Showalter issued written counseling to Prechtel for inappropriately burning the seals on the packages produced by her line.

- On March 20, 2006, Prechtel, along with six other Line Managers, received a warning for having incomplete codes on the packages from her production line.

- On June 23, 2006, Showalter issued written counseling to Prechtel for failing to timely report an equipment malfunction to him. The incident resulted in Prechtel's production line being down for several hours, which had an adverse effect on her line's production quota.

II.

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When the non-moving party fails to provide a factual basis sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment is mandated. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.

To establish a *prima facie* case of harassment based on a hostile work environment, Plaintiff must show the following: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on her sex; (4) the harassment complained of was so severe and pervasive that it affected a term, condition, or privilege of her employment; and (5) there is a basis for employer liability. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). Defendant bases its motion for summary judgment solely on prong four: whether the alleged sexual harassment was "severe and pervasive" enough to satisfy the requirements of a *prima facie* case. The determination of whether the challenged conduct was "sufficiently severe" depends on the totality of the circumstances: the conduct's frequency, whether it posed a physical or humiliatory threat, and whether it reasonably interfered with the plaintiff's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The Sixth Circuit had addressed a wide variety of "severe and pervasive" questions. This

Court has reviewed all of the recent ones. Each one is necessarily fact-intensive. In aggregate they present a somewhat muddled picture of what constitutes a genuine issue of material fact regarding the "severe and pervasive" prong. Here, however, it is clear that the incidents alleged simply do not measure up to the required standard. Indeed, some cases that seem more severe, the district dismissed and the Circuit Court affirmed.

First, Prechtel alleges a very small number of incidents: two inappropriate comments during one casino outing, an inappropriate attempt at touching her leg during another casino outing, and a single inappropriate comment in the workplace. Prechtel has failed to allege a pervasive pattern of harassment incidents. Second, the incidents cited are not as serious as many other cases this Court and others have seen and written about. While the comments and actions alleged here are certainly inappropriate, they do not constitute the type of lewd, crude comments often found to suggest a hostile work environment. *See, e.g.*, *Wanchik v. Great Lakes Health Plan, Inc.*, 6 Fed. Appx. 252 (6th Cir. 2001) (finding a genuine issue of material fact on the "severe and pervasive" test where, *inter alia*, executives told lewd jokes, described sexual fantasies, and denigrated women's bodies).

This case is analogous to *Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000). In *Bowman*, the plaintiff alleged his supervisor rubbed his shoulder, grabbed his buttocks, and issued two sexually-laden invitations for the plaintiff to join the supervisor in a whirlpool and a swimming pool. *Id.* at 458-59. The plaintiff in *Bowman* also alleged a wide variety of other harassment, enough to fill up ten numbered paragraphs in the Sixth Circuit's opinion. *Id.* The district court found that the harassment complained of was not severe or pervasive. *Id.* at 463. The Sixth Circuit affirmed, stating that the "miscellaneous" allegations of

5

harassment against the plaintiff's supervisor were not based on the plaintiff's gender. *Id.* at 464. Considering only the four incidents mentioned above, the Sixth Circuit found them insufficient to "constitute conduct that is pervasive or severe." *Id. See also Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000) (affirming district court's grant of summary judgment in favor of employer where co-employee inserted pack of cigarettes under employee's tank top and brassiere strap, made a vulgar remark regarding the employee's virginity, and said he "almost got aroused" by employee's sweater).

Although the conduct alleged here is inappropriate, the Court concludes it does not rise nearly to the level of being severe and pervasive. Therefore, Prechtel's claim of sexual harassment creating a hostile work environment will be dismissed.

IV.

To establish a *prima facie* case of wage discrimination, Plaintiff must show: 1) Kellogg's paid different wages to employees of opposite sexes; 2) who did equal work on jobs which require equal skill, effort, and responsibility; and 3) which are performed under similar working conditions. *See Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir.1998); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). In support of her claim, Prechtel submits one affidavit from another employee. Kenneth Padgett, who was a Team Leader like Prechtel, stated that he made "slightly more" than $59,000 per year. Prechtel was being paid $57,700 per year. Padgett also stated that Chris Kelly, one of Prechtel's subordinates, was paid $59,000 per year.

There is simply insufficient evidence in the record, however, for a jury to conclude that these differences were based on gender. Prechtel's evidence of disparate pay is paltry and

probably at least partially inadmissible in its current form. Padgett provides no foundation for his testimony regarding Kelly's pay; he simply makes no showing that he knows, or ever knew Kelly's salary. Furthermore, Prechtel provides no other evidence supporting her claim of unequal pay. Discovery is complete in this case yet Prechtel has provided no pay records, pay stubs, historical pay data, lists of qualifications of comparable employees, or any other information that would allow a jury to conclude that Kellogg's impermissibly discriminated by gender using employee salaries.

Furthermore, Hauser stated in his deposition that any differences in salary were explainable by different levels of "experience, knowledge, and education." Without evidence to the contrary, and even drawing all inferences in favor of the Plaintiff, there is simply no way a reasonable jury could conclude that gender-based discrimination accounted for whatever pay disparities may have existed at Kellogg's. The evidence presented to the Court simply does not support such a claim at this time; therefore Plaintiff's unequal pay claim will be dismissed.

V.

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) that she engaged in a protected activity; (2) the exercise of protected rights was known to defendant; (3) defendant thereafter took an adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Defendant first claims that Prechtel cannot establish a *prima facie* case of retaliation because she did not engage in a "protected activity" under Sixth Circuit jurisprudence. Title VII, under which Prechtel has made her claim, protects an employee's participation "in any manner in

an investigation, proceeding, or hearing under . . . [Title VII]." 42 U.S.C. § 2000e-3(a). The Sixth Circuit only recently made clear that "Title VII protects an employee's participation in an employee's participation in an employer's internal investigation into allegations of unlawful discrimination *where that investigation occurs pursuant to a pending EEOC charge*." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003) (emphasis added). The Sixth Circuit further clarified its position in an unpublished opinion, *Crawford v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 211 Fed. Appx. 373 (6th Cir. 2006). In *Crawford*, the Sixth Circuit ruled that the plaintiff's "participation in an internal investigation initiated by [her] employer] in the absence of any pending EEOC charge *is not a protected activity under the participation clause*." *Id.* at 376 (emphasis added). *Crawford* is particularly analogous to the case before the Court because the investigation in *Crawford* was initiated after the plaintiff complained to a co-worker (as opposed to initiating some sort of formal complaint with management). *Id.* at 375-76. Therefore, it seems that Sixth Circuit jurisprudence would dictate that Prechtel cannot satisfy the first prong of her *prima facie* case.

However, even assuming that Prechtel can overcome the first prong, she is still unable to state a proper case for retaliation. Prechtel alleges that the counseling she received from January 2006 onward from Shawn Showalter was motivated by retaliatory intent. However, Prechtel provides no evidence that Showalter knew of her previous sexual harassment complaints and that, if he did, his counseling of her was motivated by that knowledge; that is, Prechtel cannot satisfy the second or fourth prongs of the test laid out in *Morris*. Prechtel admits in her deposition that she did not know whether Showalter had knowledge of her prior complaints, and Plaintiff's counsel have pointed to no piece of evidence that would show that he did. Therefore,

8

any claim of retaliation as to the counseling Prechtel received from January 2006 onward is dismissed.

The June 14, 2005 incident – where Hauser offered Prechtel three choices as a result of her alleged poor performance – merits closer examination, because of the temporal proximity between Prechtel's complaint and the adverse employment action. However, there appears to be little evidence that Ray Hauser was aware of Prechtel's complaints regarding him prior to this date. Hauser has stated that he first became aware of the allegations on or around June 24, 2005, when Jenny Stewart told him that Prechtel planned to sue the company for sexual harassment. In fact, Prechtel has pointed to no evidence that demonstrates that Hauser was aware of her complaints before he offered her the three unpleasant choices on June 14, 2005. At this stage in the litigation, the burden is on the plaintiff to establish that the exercise of her protected rights was known to the defendant, *Celotex*, 477 U.S. at 322, and she has failed to satisfy that burden.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record